Paul S. Doherty, III, Esq.
**HARTMANN DOHERTY ROSA**
**BERMAN & BULBULIA, LLC**
65 Route 4 East
River Edge, NJ 07661
(201) 441-9056
-and-
565 Fifth Avenue, 7th Floor
New York, NY 10017
(212) 344-4619
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THOMAS WEEKLEY,<br><br>　　　　Plaintiff,<br><br>- vs -<br><br>THALES FUND MANAGEMENT, LLC,<br>THALES FUND MANAGEMENT, LLC<br>DEFERRED COMPENSATION PLAN,<br>MAREK FLUDZINSKI, and KEVIN<br>ERSHOV,<br><br>　　　　Defendants. | Civil Action No. 12cv2499 (JSR)<br><br>CIVIL ACTION<br><br>**AMENDED COMPLAINT & JURY DEMAND** |

Plaintiff Thomas Weekley, by way of Amended Complaint in the above-captioned matter, hereby alleges and says:

### NATURE OF THE ACTION

1.   Plaintiff Thomas Weekley brings this action pursuant to Section 502(a) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1132(a) to recover benefits due to him under the terms of the Thales Fund Management, LLC Deferred Compensation Plan ("Plan").

2. Plaintiff Thomas Weekley ("Weekley" or "Plaintiff") is an individual who resides in Dobbs Ferry, New York. Weekley is a participant in the Plan as that term is defined in section 3(7) of ERISA, 29 U.S.C. § 1002(7).

3. Upon information and belief, Defendant Thales Fund Management, LLC ("Thales") is -- or at all relevant times has been -- a limited liability company that maintains its principal place of business at 140 Broadway, 45th Floor, New York, New York 10005. Thales operates -- or at all relevant times operated -- a hedge fund. Thales offered its employees deferred compensation benefits through the Defendant Plan. Upon information and belief, Thales is a sponsor, and/or administrator, and/or fiduciary of the Plan as those terms are defined in Sections 3(16), (21) of ERISA, 29 U.S.C. § 1002(16), (21).

4. Defendant Thales Fund Management, LLC Deferred Compensation Plan, last amended as of January 1, 2005, is an "employee pension benefit plan" as that term is defined in Section 2(A) of ERISA, 29 U.S.C. § 1002(2)(A).

5. Defendant Marek Fludzinski ("Fludzinski") is the founder and Chief Executive Officer of Thales. Upon information and belief, Fludzinski is a member of Thales' Deferred Compensation Committee and is a Plan administrator, and/or Plan


fiduciary, and/or trustee of the Plan as those terms are defined in Sections 3(16), (21) of ERISA, 29 U.S.C. § 1002(16), (21).

6. Defendant Kevin Ershov ("Ershov") is the Chief Investment Officer of Thales. Upon information and belief, Ershov is a member of Thales' Deferred Compensation Committee and is a Plan administrator, and/or Plan fiduciary, and/or trustee of the Plan as those terms are defined in Sections 3(16), (21) of ERISA, 29 U.S.C. § 1002(16), (21).

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this matter pursuant to ERISA Sections 502(a), (e)(1) and (f), 29 U.S.C. §§ 1132 (a), (e)(1) and (f), and 28 U.S.C. § 1331. This Court possesses supplemental jurisdiction over Plaintiff's state law claims.

8. Venue is proper under 28 U.S.C. § 1391 because all of the defendants transact business in and are subject to personal jurisdiction in this judicial district. Furthermore, venue is proper under 29 U.S.C. § 1132(e)(2) because the Plan was administered in New York, New York.

## FACTUAL BACKGROUND

### Relevant Terms of the Plan

9. Article I of the Plan states: "It is intended that the Plan constitute an unfunded 'top hat plan' for purposes of the Employee Retirement Security Act of 1974, as amended."

10. The terms of the Plan permit a deferral of income by employees for periods extending to the termination of covered employment or beyond.

11. The Plan also provides that upon termination of employment, deferred compensation shall be deemed to be invested in a money market account and that the terminated employee shall be entitled to earlier payments upon separation from service:

> Section 4.3 <u>Irrevocability of Deferral Elections.</u> Once a Deferred Compensation Agreement, properly executed, is received by the Committee, the elections of the Participant shall be irrevocable; . . . subject to permissible earlier payments, if so elected, upon the separation of service of the Participant from the Employers and/or a Change in Control.
>
> * * *
>
> Section 4.6 <u>Hypothetical Investment Vehicles.</u> ... Notwithstanding the foregoing, following a Participant's termination of employment for any reason, such Participant's Deferred Compensation Account shall be deemed invested in a three month money market index fund.

12. The Plan further states under Section 5.1 <u>Election of Distribution Date</u>:

> Payments in settlement of a Deferred Compensation Account shall be made as soon as practicable after the date or

4

dates (including the occurrence of specified events), as may be directed by the Participant in his election relating to such Deferred Compensation Account; provided, however, that, if the Participant's election results in the payment of all or a portion of the Participant's Deferred Compensation Account following the Participant's separation from service from the Employers, the Company may, notwithstanding the Participant's election, pay the Participant's Deferred Compensation upon the later of (i) the date or dates elected by the Participant and (ii) the first anniversary of the Participant's termination of employment.

**Weekley's Employment with Thales and Bonus Deferral**

13. In or about February 2004, Weekley became employed by Thales as a Portfolio Manager. Fludzinski hired Weekley to develop a stand-alone merger arbitrage strategy and build a department responsible for trading special situations.

14. As part of Weekley's employment agreement, he received a base annual salary and was entitled to participate in an annual bonus pool determined by the profitability of his team's contribution to Thales' overall risk-adjusted performance. The annual bonus pool for the merger arbitrage and special situations department -- the event-driven trading group -- was initially six percent (6%) of Net Trading Profits and was later increased to seven percent (7%).

15. During 2007, the event-driven trading group at Thales headed by Weekley generated approximately $75 million in profits for Thales' investors and accordingly Thales Fund Management. As a result, Weekley and the other members of his group were

eligible for substantial additional compensation above their base salaries. The bonus pool for the event-driven trading group for the year ending December 31, 2007 was calculated to be $5,421,125.00 out of which Weekley allocated $2,150,000.00 to his group and $3,271,000.00 to himself.

16. Notwithstanding the outstanding performance of the event-driven trading group, during late 2007 and early 2008 Thales was struggling financially and a number of Thales' investors were making redemption demands. As a result of its financial woes, Thales wanted Weekley to defer his 2007 bonus.

17. In order to induce Weekley, and the other members of the event-driven trading group, to defer their 2007 bonus compensation, Fludzinski told Weekley that the deferred bonus compensation would be "rolled over" into a new event-driven fund that would be affiliated with Thales and operated by the members of the event-driven trading group. Based on Fludzinski's representations, in or about February 2008, Weekley determined he would defer the full amount of his 2007 bonus, $3,271,000.00 under the Plan.

18. During these discussions, Fludzinski and Ershov failed to disclose to Weekley that they were in the process of closing and/or liquidating Thales.

19. At the time Weekley deferred this compensation, Fludzinski and Ershov represented to him that Thales would pay

6

the deferred compensation on January 1, 2010 and that the deferred compensation would only be forfeited if he voluntarily terminated his employment before that date.

20. In or about March 2008, Thales closed the event-driven trading group. Weekley remained employed by Thales but, contrary to Fludzinski's prior representations, Thales never started a new fund to be operated by members of the event-driven trading group.

21. On April 7, 2008, Weekley executed a Deferred Compensation Agreement which stated that "the Employer will establish a Deferred Compensation Account under the Plan on [Weekley's] behalf equal to $3,271,000.00" and that this amount would vest, subject to his continued employment with Thales on January 1, 2010, provided, however, that the account would become 100% vested upon the termination of his employment other than for cause.

22. During the first half of 2009, Thales' financial troubles became worse. Upon information and belief, Thales' poor financial condition was exacerbated after Fludzinski paid himself (and other top executives including Ershov) additional compensation, which effectively rendered Thales insolvent. Indeed, upon information and belief, during this time period Thales' former CFO, Tim Tenaglia, wrote an email wherein Tenaglia expressed concern that a specific transfer to

7

Fludzinski would render Thales effectively insolvent. As a result, Weekley began to demand that Thales provide information and assurances regarding the status of his deferred compensation. Defendants provided inconsistent and misleading information in response to these requests.

23. In retaliation for these demands, on June 22, 2009 Fludzinski terminated Weekley's employment with Thales without cause.

**Demands for Payment**

24. Both prior to and after his termination, Weekley -- through his counsel William J. Foster, IV, Esq. ("Foster") -- made repeated requests for information regarding the status of his deferred compensation. In addition, Foster voiced concern that the deferment under the Plan may have been deficient and that the entire deferred amount was immediately due and payable.

25. In response to these requests, Fludzinski and Ershov -- directly and through counsel -- provided Weekley with inconsistent, misleading and opaque answers regarding his deferred compensation account balance.

26. In a February 10, 2009 email, Fludzinski communicated to Weekley that he would receive $2,447,023.00 in deferred compensation.

27. Then, in an email dated June 12, 2009 to Foster from Olga Gutman, Esq. ("Gutman") of Simpson Thatcher & Bartlett, LLP

8

("Simpson Thatcher"), counsel for Defendants, Gutman indicated that Thales was "in the process of trying to sell the last investment in the liquidation trust which would allow Thales to compute the final rate of return and to actually shut down Thales Holdings."

28. On July 30, 2009, Gutman wrote to Foster stating that: she agreed "that deferrals relating to the original amount of $3.271 million have vested as of the termination date"; payment would be made "on or prior to June 22, 2010"; "[t]he returns of Thales Holdings for the period prior to the termination will be based on its audited returns"; and "[f]ollowing termination, the deferred amounts will be adjusted in accordance with the risk-free rate...."

29. On October 6, 2009, Jamin Koslowe, Esq. of Simpson Thatcher, in response to Foster's repeated demands that Weekley's deferred compensation in the amount of $3,271,000.00 was vested and immediately owing, wrote to Foster and stated that his clients were "generally on the same page as you in terms of the calculation methodologies for the deferral award in question, so I do not anticipate a dispute in terms of the amount of the award. However, they are still considering the issue of timing of payment."

30. In a November 23, 2009 email, Fludzinski wrote to Weekley that "[b]y our calculation, before any adjustments

9

[relating to a previous deferred compensation amount of $460,000.00], the total amount owed is approximately $2.1 m."

31. Notwithstanding these varied representations, to date Defendants have only paid Weekley approximately $700,000.00 towards the total deferred compensation amount of $3,271,000.00.

32. In addition, upon information and belief, Defendants have failed to satisfy the reporting and disclosure requirements of ERISA and failed to comply with other ERISA provisions

33. Defendants have also failed to provide Weekley any opportunity for a full and fair review of the denial of his claim for his deferred compensation benefits.

## FIRST COUNT
## (ERISA)

34. Plaintiff repeats and realleges the allegations set forth above as though set forth herein at length.

35. The Thales Deferred Compensation Plan is an employee benefit plan with the meaning of ERISA, 29 U.S.C. § 1002(2)(A) and (3) and the Plaintiff is a qualified participant in the Plan.

36. Defendants have wrongfully denied benefits due Plaintiff under the Plan in violation of ERISA, 29 U.S.C. § 1132(a)(1)(B), and 29 U.S.C. § 1132(a)(3).

37. Defendants have wrongfully denied Plaintiff information regarding Thales' Deferred Compensation Plan and/or

10

provided false and misleading information regarding the Plan in violation of ERISA, 29 U.S.C. § 1132(c).

38. Defendants failed to provide Plaintiff with adequate notice of the denial of his benefits, or a reasonable opportunity for a full and fair review of the denial of Plaintiff's claim for benefits under the Plan in violation of ERISA, 29 U.S.C. § 1133.

39. As a result of the foregoing, Plaintiff has suffered damages.

40. Plaintiff is entitled to recover his attorneys' fees and costs of suit if he prevails in this litigation pursuant to 29 U.S.C. § 1132(g).

**WHEREFORE**, Plaintiff demands that judgment be entered in his favor and against Defendants, awarding to Plaintiff his compensatory damages, the benefits and information due Plaintiff under the Plan, statutory damages and penalties, interest, attorneys' fees, costs of suit and such other relief as the Court deems appropriate.

### SECOND COUNT
### (Breach of ERISA Fiduciary Duties)

41. Plaintiff repeats and realleges the allegations set forth above as though set forth herein at length.

42. On its face, the Thales Deferred Compensation Plan purportedly constitutes a "top hat plan". A top hat plan is

11

defined as "a plan which is unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees." 29 U.S.C. § 1051(2). A top hat plan is exempt from ERISA's funding and fiduciary responsibility provisions.

43. Upon information and belief, a large number of Thales' employees who were employed in a broad range of positions and received a broad range of compensation participated in the Plan. By way of example, all of the employees who worked in Thales' event-driven trading group under Weekley participated in the Plan.

44. Because the Plan was available to a large number of Thales' employees, the Plan did not (and does not) qualify for treatment as a top hat plan. Therefore, the Plan's fiduciaries – Thales, Fludzinski, and Ershov – owed fiduciary duties to the Plan and its participants.

45. Upon information and belief, Thales, Fludzinski and Ershov breached their fiduciary obligations to Plaintiff and the Plan by one or more of the following acts:

(a) Utilizing the Plan's assets for the benefit of Thales and/or its principals;

(b) Failing to communicate with Weekley regarding the Plan honestly, clearly and accurately;

(c) Treating the Plan's participants in an inconsistent manner by making greater payments to certain participants and lesser payments to Weekley and others; and

(d) Failing to exercise the care, skill, prudence and diligence that a prudent person would when acting in a like capacity and familiar with such matters.

46. As a result of these breaches, Plaintiff, the Plan and the Plan's participants and beneficiaries have suffered financial losses and damages.

47. Pursuant to ERISA §409, 29 U.S.C. §1109, and ERISA §502(a), the Defendants are liable to restore to the Plan the losses that Plaintiff, the Plan and the Plan's participants and beneficiaries have suffered as a direct result of the Defendants' breaches of fiduciary duty and are liable for any other available and appropriate equitable relief, including prospective injunctive relief and declaratory relief, and attorneys' fees.

**WHEREFORE**, Plaintiff, on behalf of himself, the Plan and all similarly situated Plan participants and beneficiaries, demands that judgment be entered in his favor and against Defendants, and respectfully requests that the Court:

(a) Find and declare that the Defendants have breached their fiduciary duties as described above;

(b) Order the Defendants to make restitution to the Plan all losses that the Plan incurred as a result of the conduct described above and to restore the Plan to the position it would have been in but for the breaches of fiduciary duty;

(c) Impose a constructive trust on any monies by which the Defendants were unjustly enriched as a result of their breaches of fiduciary duty and/or cause the Defendants to disgorge such monies and return them to the Plan;

(d) Remove any fiduciary who has breached his or her fiduciary duties and/or enjoin the fiduciary from future breaches of ERISA;

(e) Appoint an independent fiduciary to administer and manage the Plan;

(f) Award compensatory damages to the Plaintiff in the amount of his monetary losses;

(g) Require Defendants to render an accounting of Plan assets;

(h) Order costs and attorneys' fees be awarded to Plaintiff pursuant to ERISA §502(g);

(i) Order the payment of interest to the extent it is allowed by law; and

(j) Grant any other and further relief the Court deems appropriate.

## THIRD COUNT
### (Breach of Contract)

48. Plaintiff repeats and realleges the allegations set forth above as though set forth herein at length.

49. Defendants agreed to pay $3,271,000.00 in deferred compensation to Plaintiff on or before January 1, 2010; to date, however, Thales has only paid Plaintiff approximately $700,000.00. Thales breached the parties' agreement when it failed to pay the full amount of Weekley's deferred compensation on or before January 1, 2010.

50. Alternatively, to the extent that the Defendants failed to properly administer the Plan, the entire deferred compensation should have been paid to Weekley when it was awarded.

51. As a result, Plaintiff has been damaged.

**WHEREFORE**, Plaintiff demands that judgment be entered in his favor and against Defendants, awarding to Plaintiff his compensatory damages, interest, attorneys' fees, costs of suit and such other relief as the Court deems appropriate.

## FOURTH COUNT
### (Negligent Misrepresentation)

52. Plaintiff repeats and realleges the allegations forth above as though set forth herein at length.

15

53. In order to induce Plaintiff to defer his 2007 bonus compensation, Fludzinski and Ershov negligently and falsely represented that the bonus compensation would be rolled over into a new fund that would be operated by the members of the event-driven trading group and affiliated with Thales. In reliance upon this representation, Plaintiff agreed to defer his 2007 bonus.

54. Additionally, while inducing Plaintiff to defer his 2007 bonus compensation, Fludzinski and Ershov failed to disclose to Weekley that they were in the process of closing and/or liquidating Thales.

55. Contrary to Defendants' negligent misrepresentations, in March of 2008 Defendants closed the Plaintiff's event-driven fund and never deposited the monies into a new fund to be operated by Plaintiff (and the other members of the event-driven group) as agreed to by all parties.

56. Thales, Fludzinski and Ershov also negligently misrepresented to Plaintiff that his deferred compensation would be invested in a money market account. In reality, Defendants invested Plaintiff's deferred compensation in a separate fund known as "Leros" that was owned by Fludzinski.

57. Thales, Fludzinski and Ershov also negligently and falsely represented to Plaintiff that his deferred compensation would only be forfeited if he voluntarily terminated his own

16

employment before January 1, 2010. Contrary to the representations made by the Defendants, Thales subsequently refused to pay the deferred bonus compensation due and owing Plaintiff after he was terminated without cause by Thales before January 1, 2010.

58. As a result of Plaintiff's reasonable and justified reliance upon Defendants' negligent misrepresentations and material omissions, Plaintiff has been damaged.

**WHEREFORE**, Plaintiff demands that judgment be entered in his favor and against Defendants, awarding to Plaintiff his compensatory damages, punitive damages, interest, attorneys' fees, costs of suit and such other relief as the Court deems appropriate.

<u>JURY DEMAND</u>

Plaintiff hereby demands a trial by jury as to all issues so triable.

         HARTMANN DOHERTY ROSA
         BERMAN & BULBULIA, LLC
         Attorneys for Plaintiff

         By: /s/ Paul Doherty
          Paul S. Doherty, III

Dated: June 12, 2012

Of counsel:
William J. Foster, IV, Esq.
**MCMILLAN, CONSTABLE, MAKER & PERONE, LLP**
2180 Boston Post Road
Larchmont, New York 10538