**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THOMAS WEEKLEY, | ) |
| | ) |
| | ) Civil Action No.: |
| Plaintiff, | ) 12 cv 2499-JSR |
| | ) |
| -against - | ) |
| | ) |
| THALES FUND MANAGEMENT, LLC; THALES | ) |
| FUND MANAGEMENT, LLC DEFERRED | ) |
| COMPENSATION PLAN; MAREK FLUDZINSKI and | ) |
| KEVIN ERSHOV, | ) |
| | ) |
| Defendants. | ) |

### DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE SECOND AMENDED COMPLAINT[1]

**TANNENBAUM HELPERN**
**SYRACUSE & HIRSCHTRITT LLP**
Tammy P. Bieber, Esq.
900 Third Avenue
New York, New York 10022
(212)   508-6700

*Attorneys for Defendants*

---

[1] Defendants have agreed to treat their Motion to Dismiss Plaintiff's Amended Complaint (Dkt No. 9) as a response to Plaintiff's Second Amended Complaint (Dkt No. 14), which was filed after Plaintiff's Opposition to Defendants' Motion to Dismiss (Dkt No. 12). Thus, the arguments and factual references in Defendants' Reply incorporate by reference those arguments in Defendants' opening brief, as well as substantively respond to the new allegations introduced in the Second Amended Complaint.

## TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................. i

TABLE OF AUTHORITIES .................................................................................... ii

PRELIMINARY STATEMENT .............................................................................. 1

ARGUMENT ............................................................................................................ 2

I.     THE THALES PLAN IS NOT AN ERISA PLAN ........................................ 2

    A.    The Plan Language .............................................................................. 3

    B.    The Surrounding Circumstances ........................................................ 5

II.    PLAINTIFF HAS NOT STATED A CLAIM FOR BREACH OF FIDUCIARY DUTY ....................................................................................... 7

III.    DEFENDANTS DID NOT VIOLATE ERISA SECTIONS 1132(C) OR 1133 .............. 11

IV.    PLAINTIFF'S BREACH OF CONTRACT CLAIM FAILS AS A MATTER OF LAW ................................................................................. 12

V.    PLAINTIFF HAS NOT AND CANNOT STATE A CLAIM FOR NEGLIGENT MISREPRESENTATION ............................................................. 13

VI.    PLAINTIFF FAILS TO ALLEGE THAT HE IS OWED ANY ADDITIONAL DEFERRED COMPENSATION ....................................................................... 17

CONCLUSION ........................................................................................................ 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Albers v. The Guardian Life Ins. Co. of Am.*, No. 98-CIV-6244, 1999 U.S. Dist. LEXIS 5410
    (S.D.N.Y. Apr. 19, 1999) ........................................................................................ 3

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................................. 7, 11

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................ 7, 11

*Brown v. Brown*, 785 N.Y.S.2d 417 (App. Div. 2004) .................................................. 14

*Campbell v. Thales*, 10 Civ. 3177, 2010 U.S. Dist. LEXIS 114439
    (S.D.N.Y. Oct. 12, 2010) ................................................................................. passim

*Clark-Fitzpatrick, Inc. v. Long Island R. Co.*, 516 N.E.2d 190 (N.Y. 1987) ............... 14

*Demery v. Extebank Deferred Comp. Plan*, 216 F.3d 283 (2d Cir. 2000) ................. 8, 9

*Foster v. Bell Atlantic Tricon Leasing Corp.*, No. 93 Civ. 4527, 1994 U.S. Dist. LEXIS 5065
    (S.D.N.Y. Apr. 20, 1994) ......................................................................................... 3

*Gray v. Citigroup Inc.*, 662 F.3d 128 (2d Cir. 2011) ................................................. 8

*Guilbert v. Gardner*, 480 F.3d 140 (2d Cir. 2007) .................................................. 14

*Holansky v. Prudential Financial*, No. 02 C 4820, 2004 U.S. Dist. LEXIS 11419
    (N.D. Ill. Jun. 17, 2004) .......................................................................................... 6

*Holzer v. Prudential Equity Group LLC*, 458 F. Supp. 2d 587 (N.D. Ill. 2006) ........... 6

*Houston v. Saracen Energy Advisors, LP*, Civil Action No. H-08-1948,
    2009 U.S. Dist. LEXIS 26307 (S.D. Tex. Mar. 27, 2009) ........................................ 5

*In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*, 763 F. Supp. 2d 423
    (S.D.N.Y. 2011) ..................................................................................................... 9

*Janus Capital Group, Inc. v. First Derivative Traders*, 131 S. Ct. 2296 (U.S. 2011) ............... 18

*M&T Bank Corp. v. LaSalle Bank Nat'l Ass'n*, No. 08-CV-581S,
    2012 U.S. Dist. LEXIS 16448 (W.D.N.Y. Feb. 5, 2012) ........................................ 13

*Matiella v. DirectTV*, No. 11 Civ. 02458, 2012 U.S. Dist. LEXIS 14972
    (S.D.N.Y. Feb. 6, 2012) .......................................................................................... 5

*MIG, Inc. v. Paul, Weiss, Rifkind, Wharton & Garrison, L.L.P.*, 701 F. Supp.2d 518
    (S.D.N.Y. 2010) ................................................................................................... 13

*Naughright v. Weiss*, 10 Civ. 8451, 2012 U.S. Dist. LEXIS 30940 (S.D.N.Y. Mar. 7, 2012) ..... 17

*Scutti Enters., LLC v. Park Place Entm't Corp.* 322 F.3d 211 (2d Cir. 2003) ............................. 7

*Serio v. Wachovia Secs., LLC*, No. 06-cv-4681, 2007 U.S. Dist. LEXIS 63341
   (D.N.J. Aug. 27, 2007) .......................................................................................................... 6, 7

*United States v. Schiaffino,* No. 07-2194, 2009 U.S. Dist. LEXIS 48865
   (E.D. Pa. Jun. 10, 2009) ............................................................................................................ 7

*Watson v. Consol. Edison of NY*, 594 F. Supp.2d 399 (S.D.N.Y. 2009) ....................................... 3

*Wayland Inv. Fund, LLC v. Millennium Seacarriers, Inc.*, 111 F. Supp. 2d 450
   (S.D.N.Y. 2000) ...................................................................................................................... 13

*Williams v. City of New York*, 690 F. Supp. 2d 338 (S.D.N.Y. 2010) ........................................... 8

**Statutes**
26 U.S.C. § 409 (Internal Revenue Code) ..................................................................................... 4

29 U.S.C. § 1132 ........................................................................................................................... 11

29 U.S.C. § 1133 ........................................................................................................................... 11

## PRELIMINARY STATEMENT

Plaintiff has now had three opportunities to plead his case and yet, the Second Amended Complaint (the "Complaint")[2] still cannot overcome the central failings of his claims.  *First*, the plain language and the circumstances surrounding the operation of the Thales Fund Management, LLC Deferred Compensation Plan ("Thales Plan" or "Plan") as alleged cannot plausibly be read to defer systematically income to termination or retirement as they must to qualify as an ERISA plan. Notwithstanding plaintiff's attempt to slot this case into this Court's decision in *Campbell v. Thales*, 10 Civ. 3177, 2010 U.S. Dist. LEXIS 114439 (S.D.N.Y. Oct. 12, 2010), the only common element is the Thales Plan.  Here, unlike in *Campbell*, the Complaint and documents incorporated therein demonstrate that plaintiff actually signed a Deferred Compensation Agreement ("DCA"), he received his deferred compensation from earlier awards during the course of his employment and he was paid $700,000 for his 2009 Award.  There is no allegation that plaintiff or any other participant in the Plan ever elected to receive their deferred compensation at termination or beyond, even though the DCA contained such an option; or that defendants promoted the Thales Plan as a retirement plan.  Quite simply, in this case, plaintiff's enrollment in the Plan is inconsistent with any conclusion that the Plan systematically deferred compensation until retirement because plaintiff regularly received his awards during his employment at Thales Fund Management, LLC ("Thales"), and there are no allegations to the contrary.

*Second,* plaintiff disregards the express terms of the Plan and the DCA he signed which set forth the specific and permitted protocol for the treatment of his 2009 Award.   Indeed, plaintiff's repeated refrain that he is entitled to $3,271,000, the full amount of the original 2009 Award, cannot

---

[2] For the Court's convenience, we have attached a redlined comparison of the Amended Complaint and the Second Amended Complaint as Exhibit A to the Reply Declaration of Tammy P. Bieber in Support of the Motion to Dismiss the Amended Complaint ("Bieber Reply Decl.").

be reconciled with the plain terms of plaintiff's DCA that pegs the returns of plaintiff's 2009 Award to the returns of Thales Holdings, Ltd., ("Thales Holdings") and the allegations in his Complaint that Thales Holdings sustained losses in 2008 and 2009.  Moreover, his breach of contract claim does not allege either a breach of the terms of the Plan or the DCA or any damages flowing therefrom.  Similarly, plaintiff cannot avoid that each of the alleged misrepresentations on which he premises his negligent misrepresentation claim, in addition to being woefully deficient under Rule 9(b) of the Federal Rules of Civil Procedure, *is a future promise* that *arises from the same alleged wrongful conduct as the breach of contract claim* and *could not have been be reasonably relied on as a matter of law* because the subject matter is incorporated in the Plan and DCA.

*Finally*, in the first amendment to the complaint, plaintiff tried to salvage his claims by asserting that the Plan is not an ERISA top hat plan in order to gain access to ERISA's fiduciary requirements.  Plaintiff's conclusory allegations that a handful of investment professionals were offered the opportunity to participate in the plan is not enough to allege that the unfunded Plan was not a top hat plan, assuming it was an ERISA plan, which it was not.  Even if the Court were to allow plaintiff to assert claims for breach of fiduciary duty, plaintiff's allegations in the Complaint do not suffice because, *inter alia*, plaintiff has not alleged that defendants committed any misconduct in a fiduciary capacity or that any claimed breach caused plaintiff to be damaged.

Because plaintiff has not and cannot state a claim and because plaintiff has had three bites at the apple, this action should be dismissed with prejudice.

<u>**ARGUMENT**</u>

## I.    THE THALES PLAN IS NOT AN ERISA PLAN

Not surprisingly, to rebut defendants' argument that the Thales Plan is not an ERISA plan, plaintiff relies heavily on this Court's decision in *Campbell* and contends that this case is no different.  That contention, however, cannot withstand scrutiny.

2

The Complaint here is materially distinct from that in *Campbell* and informs of the circumstances surrounding the operation of the Plan.  Here, unlike in *Campbell*, plaintiff signed the DCA, vested in several deferred compensation awards during the course of his employment, and was paid his deferred compensation awards (including the 2009 Award).[3]  Moreover, the Complaint is utterly devoid of a single allegation (1) that Thales promoted or marketed the Plan as a retirement alternative; (2) that plaintiff ever elected to receive his deferred compensation on termination of employment or retirement; (3) that any other employee ever made such an election; or finally, (4) that the Plan was anything other than an incentive bonus plan.  Indeed, although the Plan language is unchanged, plaintiff has even taken a different view of that language in this case.  Thus, the Complaint when viewed together with the documents incorporated and referenced therein, pleads only that the Thales Plan under certain limited circumstances *happens* to defer the bonus until termination, not that it *generally* does so as it must to qualify as an ERISA plan.  *See e.g. Albers v. The Guardian Life Ins. Co. of Am.*, No. 98-CIV-6244, 1999 U.S. Dist. LEXIS 5410, at *10 (S.D.N.Y. Apr. 19, 1999) (finding payments post-retirement merely incidental); *Foster v. Bell Atlantic Tricon Leasing Corp.*, No. 93 Civ. 4527, 1994 U.S. Dist. LEXIS 5065, at *5-6 (S.D.N.Y. Apr. 20, 1994).

A.      The Plan Language

Plaintiff cites to sections 4.3, 4.6, and 5.1 of the Plan to support his assertion that the Plan generally deferred income to termination and beyond.  If anything those provisions demonstrate that

---

[3] Although plaintiff implies that this Court's consideration of the DCAs other than that for the 2009 Award is beyond his pleading, those DCAs go to plaintiff's agreement under the Thales Plan.  *See Watson v. Consol. Edison of NY*, 594 F. Supp.2d 399, 411 n.3 (S.D.N.Y. 2009) (Rakoff, J.); *Holzer v. Prudential Equity Group LLC*, 458 F. Supp. 2d 587, 590 (N.D. Ill. 2006) (considering memorandum to employees explaining plan and forms signed by plaintiff on motion to dismiss as parts of the agreement concerning the Plan).  Even were that not so, several e-mails quoted in the Complaint demonstrate the existence of the earlier awards.  (*See, e.g.* Bieber Decl. Ex. E (e-mail from Fludzinski to Weekley discussing 2006 and 2008 Award payments and value.)

such deferral would be the exception and not the rule and thus cannot be said to defer generally or systematically.

Section 4.3 of the Plan tracks the language and requirements of section 409A of the Internal Revenue Code as it must to avoid unfavorable tax treatment under that section.  *See* 26 U.S.C. § 409A(a)(4)(C).[4]  Thus, section 4.3 is not concerned with the systematic deferral of benefits to termination or retirement.  Rather, the 5-year deferral in section 4.3 as well as all the other requirements are expressly required by section 409A to avoid certain taxes and penalties relating to the timing of deferrals and distributions.

Plaintiff's reliance on sections 4.6[5] and 5.1 fares no better.  These sections simply outline the effects of termination if employment *happens* to terminate before an award has otherwise vested.  Indeed, both of these provisions are in operation in this case but only because plaintiff's employment happened to be terminated, not because of any systematic deferral.  Had plaintiff not been terminated, he would have either forfeited his award or vested in it in January 2010.

---

[4] (C)   Changes in time and form of distribution

The requirements of this subparagraph are met if, in the case of a plan which permits under a subsequent election a delay in a payment or a change in the form of payment—

**(i)** the plan requires that such election may not take effect until at least 12 months after the date on which the election is made,

**(ii)** . . . the plan requires that the payment with respect to which such election is made be deferred for a period of not less than 5 years from the date such payment would otherwise have been made. . . .

26 U.S.C. § 409A(a)(4)(C).

[5] Section 4.6 provides that "following a Participant's termination of employment for any reason, such Participant's Deferred Compensation Account shall be deemed invested in a three month money market index fund."  Section 5.1 allows for the award to be paid up to the later of the selected deferral date or one year after termination of employment.

In reaching its decision in the *Campbell* action, one of the factors this Court relied on in upholding the claim was the recital at the start of the Plan that the Plan was intended "to be an unfunded 'top hat plan' for purposes of [ERISA]."  *Campbell*, 2010 U.S. Dist. LEXIS 114439, at *8-9.  Both parties now agree, albeit for entirely different reasons, that that language is not dispositive as to whether the Plan was an ERISA (or a top hat plan).[6]  *See Matiella v. DirectTV*, No. 11 Civ. 02458, 2012 U.S. Dist. LEXIS 14972, at *21 (S.D.N.Y. Feb. 6, 2012) (dismissing claim that ERISA formed basis of federal jurisdiction despite plan's express language that plan "[was] governed by provisions of [ERISA]"); *Houston v. Saracen Energy Advisors, LP*, Civil Action No. H-08-1948, 2009 U.S. Dist. LEXIS 26307, at * 22 (S.D. Tex. Mar. 27, 2009) (same).  Rather, it is the operation of the Plan that determines whether the Plan is governed by ERISA.  *Matiella*, 2012 U.S. Dist. LEXIS 14972, at *21.

B.      The Surrounding Circumstances

Although the Plan language might result under certain limited circumstances in an award being paid after termination, the allegations in this case and the plaintiff's DCAs demonstrate that that was not how the Plan in fact operated, and there are no allegations to the contrary.  Plaintiff here vested in and was paid all of his awards during the course of his employment.[7]  Even the 2009 Award would have vested during the course of plaintiff's employment had he not been terminated. Although plaintiff claims that "how one plan participant utilized the Thales Plan in a prior year is

---

[6] Plaintiff now claims that the language was correct when drafted but the operation of the Plan was not consistent with the original intent.  (Pl.'s Opp'n Mem. at 12.)  Plaintiff's hypothesis notwithstanding, his claim that the Plan was not a top hat plan recognizes that the recital is not dispositive.

[7] The Complaint does not challenge the payment of any earlier awards.  Nor does it allege that plaintiff was not paid his deferred compensation during his employment for any year other than the 2009 Award.  (*See* Bieber Decl. Exs. B-C, E & I.)

not indicative of how the Plan operated as a whole," (Pl.'s Opp'n Mem. at 8), plaintiff does not allege a single fact to suggest that the Plan operated any differently for any other employee.

Instead, plaintiff relies on a series of cases in support of his claim that the "surrounding circumstances" of the Thales Plan may qualify it as an ERISA plan, and therefore dismissal at this stage is inappropriate.  (Pl.'s Opp'n Mem. at 10-11.)  Those cases, however, differ significantly from the instance case.  First, the vesting of the benefits in those cases did not accelerate on termination of employment as was the case here.  *Serio v. Wachovia Secs., LLC*, No. 06-cv-4681, 2007 U.S. Dist. LEXIS 63341, at *18-19 (D.N.J. Aug. 27, 2007); *Holzer v. Prudential Equity Group LLC*, 458 F. Supp. 2d 587, 592-93 (N.D. Ill. 2006); *Holansky v. Prudential Financial*, No. 02 C 4820, 2004 U.S. Dist. LEXIS 11419, at *7-9 (N.D. Ill. Jun. 17, 2004).   As such, in the cases relied on by plaintiff the employee still had a legal risk of loss for a period after termination. Pursuant to the Thales Plan, however, termination resulted in either forfeiture of the award or accelerated vesting.  (Compl. ¶ 11; Bieber Decl. Ex. D.[8])

Second, all of the complaints in those cases contained allegations of the surrounding circumstances that supported a conclusion on a motion to dismiss that such plans were intended to provide retirement benefits.  For example, those cases alleged:

- "Plan participants routinely seek successive one year extensions under the terms of the plan to continue deferment to retirement" *Holansky*, 2004 U.S. Dist. LEXIS 11419, at *7-9.

- Defendant "promoted the Plan as an employee benefit pension plan." *Id*. at *7.

- Defendant "told new trainees that the Plan was to serve as a pension plan and was a 'great way to save for retirement'" *Id*.

- Defendants "promoted the [plan] to employees to 'defer large amounts of income until retirement.'" *Holzer*, 458 F. Supp. 2d at 592.

---

[8] Declaration of Tammy P. Bieber, filed in connection with Defendants' Motion to Dismiss Plaintiff's Amended Complaint, Dkt. No. 11.

- Plan was promoted by defendants "through brochures, memoranda, presentations to employees, and other promotional materials, as method of saving for retirement." *Serio*, 2007 U.S. Dist. LEXIS 63341, at *20.

Here, there are no allegations that the Thales Plan was marketed or promoted as a retirement plan or that any plan participant routinely continued deferral of a deferred compensation award to retirement. As noted above, plaintiff's own participation in the Thales Plan belies any suggestion that the Plan operated as a retirement plan.[9]

The Plan language coupled with the surrounding circumstances of the Thales Plan as alleged in the Complaint make clear that it is not an ERISA plan. Plaintiff's ERISA claims should therefore be dismissed. Moreover, because the ERISA claims are the sole basis of the Court's jurisdiction over this matter, the Complaint should be dismissed in its entirely for lack of subject matter jurisdiction.[10]

## II.    PLAINTIFF HAS NOT STATED A CLAIM FOR BREACH OF FIDUCIARY DUTY

Only if the Thales Plan was an ERISA plan and only if it was also not a top hat plan could defendants even arguably owe the plan participant's a fiduciary duty. Merely pleading on

---

[9] To the extent plaintiff claims that this Court should not dismiss because "the Court must draw all reasonable inferences in favor of the plaintiff, construe the allegations of the complaint in the light most favorable to plaintiff, . . . ," plaintiff mistakenly relies on *Scutti Enters., LLC v. Park Place Entm't Corp.* 322 F.3d 211, 214 (2d Cir. 2003), a pre-*Twombly/Iqbal* case, in support of the pleading standard he is required to meet pursuant to Rule 8(a). (Pl.'s Opp'n Mem. at 8, 14.) Plaintiff instead must plead facial plausibility, i.e., "factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Thus, if plaintiff "[h]as not nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[10] Plaintiff asks this Court to remand this case to state court if the Court determines that the Thales Plan is not an ERISA plan. (Pl.'s Opp'n Mem. at 12 n.3.) The Court cannot, however, remand a case to state court that plaintiff first filed in federal court. *See United States v. Schiaffino*, No. 07-2194, 2009 U.S. Dist. LEXIS 48865, at *7 n.2 (E.D. Pa. Jun. 10, 2009) ("[L]ack of subject matter jurisdiction terminates a case originally filed in federal court because Rule 12(h)(3) instructs the district court to dismiss cases which do not meet jurisdictional prerequisites.").

information and belief that a top hat plan was offered to many employees, based on an allegation

that a handful of investment professionals were plan participants, is not enough to allege that an

unfunded plan did not operate as a top hat plan.[11]  *See Williams v. City of New York*, 690 F. Supp.

2d 338, 345 (S.D.N.Y. 2010) (finding plaintiff's allegations upon information and belief

"inexplicably vague" and dismissing federal discrimination claim); *see also Demery v. Extebank

Deferred Comp. Plan*, 216 F.3d 283, 286-90 (2d Cir. 2000) (setting forth requirements for top hat

plan).

Even were that enough, plaintiff has not alleged that any of the defendants breached their

fiduciary duty.  Among other failings, plaintiff fails to plead that defendants were acting as

fiduciaries when taking the actions alleged in the Complaint.  *See generally Gray v. Citigroup Inc.*,

662 F.3d 128, 135 (2d Cir. 2011); (Defs.' Mem. at 17).  Nor does he specify any loss sustained as a

result of the alleged breaches.  As set forth below, each of the four alleged breaches should be

dismissed.

### Alleged Breach 1 – Compl. ¶ 45(a):  Misappropriation of Assets

According to plaintiff all of the defendants used the Plan's assets for the benefit of Thales

and/or its principals.  For that proposition plaintiff cites to an e-mail exchange between Mr.

Tenaglia and Mr. Fludzinski. (Doherty Decl.[12] ¶ 2 & Ex. A.)  According to plaintiff, those e-mails

show that certain transfers made on behalf of Thales to pay "rent, payroll, and other expenses [and]

which included payments to Ershov, Fludzinski's brother, and Fludzinski's ex-wife Nina," "would

render Thales effectively insolvent."  (Compl. ¶ 45(a); Pl.'s Opp'n Mem. at 16.)  At the outset, other

---

[11] Plaintiff provides no explanation as to how such a conclusory statement could be enough.  If, however, the Court were to deem that pleading sufficient, defendants agree that the question of whether the plan functioned as a top hat plan is one of fact.

[12] Declaration of Paul S. Doherty III, Esq. in Opposition to Defendants' Motion to Dismiss the Amended Complaint, Dkt. No. 13.

than the generic use of the term "defendants," there are no allegations that Mr. Ershov made any improper payments in his role as ERISA fiduciary or otherwise.  More generally, plaintiff's claim of misappropriation fails on at least three separate grounds.

*First*, defendants could not have used "Plan assets" for any purpose because there were no Plan assets.[13]  That Thales may hold investments to meet its unfunded obligations and refer to those investments as "deferred" does not change the fact that the Plan was unfunded and plaintiff has no claim to any specific assets.  (Bieber Decl. Ex. A ¶ 4.9 (election of a hypothetical investment vehicle "*shall not* be considered or construed in any manner as an actual investment"); *id.* ¶ 6.1 ("all distributions shall be paid by the Employer from its general assets".)  *See also Demery*, 216 F.3d at 287.  Thales was free to allocate its investments as it deemed necessary.  (*Id.*)

*Second*, plaintiff has not alleged the Mr. Fludzinski was acting in his capacity as an ERISA fiduciary when he was managing Thales cash flow.  In managing the affairs of a company, officers of the company do not become ERISA fiduciaries even when they may be ERISA fiduciaries when undertaking their ERISA obligations.  *See generally In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.,* 763 F. Supp. 2d 423, 577 (S.D.N.Y. 2011) (finding no breach of fiduciary duty where alleged conduct of ERISA fiduciaries was corporate communication from employer to employee and not ERISA communication from fiduciary to participant).

*Finally*, contrary to plaintiff's bald assertion, nothing in this e-mail suggests that Thales was insolvent.  The e-mail simply discusses moving money from overseas and awaiting future payments.  Accordingly, plaintiff has not and cannot plead that the defendants misappropriated anything, let alone any assets to which plaintiff was entitled.

---

[13] Plaintiff's hindsight claim that the plan was not actually a top hat plan and as such should have been funded does not change the fact that the plan had no assets at that time for the defendants to misappropriate.  (Bieber Decl. Ex. A ¶¶ 4.9 & 6.1.)

***Alleged Breach 2 – Compl. ¶ 45(c):  Treating Plan Participants Inconsistently***

The Complaint alleges that defendants breached their fiduciary duties by "treating the Plan's participants in an inconsistent manner."  (Compl. ¶ 45(c).)  Plaintiff does nothing in his opposition to explain why that is a violation of defendants' fiduciary duties.  Plaintiff does not even allege that their DCAs contained the same terms, and the Plan documents expressly provide that "[t]he Committee's determinations hereunder need not be uniform, and may be made selectively among Eligible Employees, whether or not they are similarly situated."  (Bieber Decl. Ex. A ¶ 7.2.)  Thus, even if Thales did treat different participants differently, which it did not, the plain and unambiguous language of the Plan permitted that treatment.[14]

***Alleged Breach 3 – Compl. ¶ 45(b):  Failing To Communicate with Plaintiff***

Plaintiff next claims that defendants failed to communicate with him "honestly, clearly or accurately."  As discussed *infra* at 11, 19*,* Thales, through either Mr. Fludzinski or counsel, clearly communicated with plaintiff about the status of his Award based on the information available at the time of the communication.  Moreover, plaintiff does not allege any damage flowing from this alleged breach.  He complains that he was paid only $700,000 of the alleged $3.271 million he was owed.  (Pl.'s Opp'n Br. at 16.)  There is simply no causal nexus between the alleged opaque information and plaintiff's purported damages.

---

[14] In his opposition papers, plaintiff promised that his next amendment to the complaint (which is now the Second Amended Complaint that is referred to herein as the Complaint) "will provide further specificity regarding the facts underlying" plaintiff's allegations.  (Pl.'s Opp'n Mem. at 15 n.5.) Plaintiff stated his intention to amend the complaint to plead that "Ershov and other employees got paid sixty percent (60%) of the deferred compensation due to them on January 1, 2010 while to date Weekley has only received twenty-one percent (21%) of his Award."  (*Id*.)  Yet, when cabined by Rule 11 of the Federal Rules of Civil Procedure, plaintiff dropped the reference to Mr. Ershov and instead alleged generically that "upon information and belief, certain employees of Thales . . ." (Compl. ¶ 45(c).)

*Alleged Breach 4 – Compl. ¶ 45(d):  Failure to Exercise Case, Skill and Prudence*

Finally, plaintiff generically claims that defendants breached their fiduciary duty claims by "[f]ailing to exercise the care, skill, prudence and diligence that a prudent person would."  (Compl. ¶ 45(d).)  This is exactly the type of barebones conclusory allegation that must be rejected under *Twombly* and *Iqbal*.

Plaintiff's breach of fiduciary duty claim should, therefore, be dismissed.

## III.    DEFENDANTS DID NOT VIOLATE ERISA SECTIONS 1132(C) OR 1133

The dialogue between the parties as alleged in the Complaint and the documents referenced therein negate plaintiff's claim that defendants violated §§ 1132(c) and 1133 of ERISA.  In lieu of addressing what information plaintiff requested and the manner in which defendants allegedly refused to provide such information, plaintiff simply reiterates his bald assertion that defendants provided "inconsistent, misleading and opaque" answers to his questions.  (Compl. at ¶ 25; Opp. Br. at p. 20.)  Indeed, even if the Court determines that the Thales Plan may be an ERISA plan, the communications referenced in the Complaint clearly demonstrate that defendants maintained an open dialogue with plaintiff regarding the status of his deferred compensation, and was responsive to plaintiff's requests.  It is unclear what additional information plaintiff sought and plaintiff does not specify.

In connection with his claim under section 1133, plaintiff's opposition is silent respecting his failure to allege that he requested a review of the denial of his benefits or even that his benefits were denied.  As plaintiff admits, Thales paid him more than $700,000; plaintiff does not claim that he requested any information from any of the defendants after the receipt of his deferred compensation award, nor does he allege that defendants refused to provide any information to him regarding the method of calculation of his award.  Plaintiff's attempts to invoke §§ 1132 and 1133 therefore fail, and those claims should be dismissed.

## IV.   PLAINTIFF'S BREACH OF CONTRACT CLAIM FAILS AS A MATTER OF LAW

Plaintiff is correct that to state a claim for breach of contract, one must allege, *inter alia*, a breach and damages.  (Pl.'s Opp'n Mem. at 22.)  Here, plaintiff has alleged neither.  According to plaintiff, Thales[15] agreed to (1) roll the bonus compensation into a new event-driven fund, (2) pay the deferred compensation to plaintiff in January 2010, and (3) forfeit the deferred compensation only if plaintiff voluntarily terminated his employment.  In plaintiff's view, Thales breached that agreement "when it failed to pay Plaintiff the full amount of $3,271,000 of deferred compensation due him."  (Pl.'s Opp'n at 22.)   Plaintiff makes no attempt to reconcile these assertions with the plain language of the Plan or DCA.  Nor can he.

The DCA indisputably designates Thales Holdings as the hypothetical investment vehicle. (Pl.'s Opp'n Br. at 18.)  The DCA further spells out the timing of the vesting and payment of the deferred compensation.  In the usual course, the 2009 Award would have vested as plaintiff claims on January 1, 2010.  (Bieber Decl. Ex. D.)  Where termination of employment occurs before the award is vested, i.e., January 1, 2010, as was the case here, the DCA accelerates the vesting while at the same time providing additional time for the payment.  (*Id.*)[16]  Similarly, any claim by plaintiff that his 2009 Award was somehow forfeited is directly contradicted by the $700,000 paid to plaintiff in satisfaction of his 2009 Award.  And of course, as discussed *infra*, although plaintiff repeatedly states that he should be paid the full amount of the original award, even plaintiff

---

[15] Plaintiff concedes that he asserts his breach of contract claim only against Thales, not against defendants Ershov and Fludzinski.  (Pl.'s Opp'n Mem. at n.8.)

[16] To the extent plaintiff is arguing that because Thales's paid plaintiff $700,000 rather than the $3.271 million the payment is somehow untimely, that contention adds nothing to plaintiff's claim insofar as it is no different than plaintiff's argument that he is owed the full amount of the original award.

recognizes that the returns of Thales Holdings were to be applied to the original amount.  (Pl.'s Opp'n Mem. at 18.)

In essence, plaintiff is complaining that Thales did what it was obligated to do under the Plan and DCA.  Because plaintiff's claims are in direct conflict with the plain terms of the DCA, his claim should be dismissed.  *See Wayland Inv. Fund, LLC v. Millennium Seacarriers, Inc.*, 111 F. Supp. 2d 450, 453 (S.D.N.Y. 2000) (granting motion to dismiss breach of contract claim where defendant made interest payments in conformity with the clear and unambiguous terms of the underlying agreement); *M&T Bank Corp. v. LaSalle Bank Nat'l Ass'n*, No. 08-CV-581S, 2012 U.S. Dist. LEXIS 16448, at *21 (W.D.N.Y. Feb. 5, 2012) (dismissing claim where plaintiff unjustifiably created nonexistent obligations and remedies in clear and indisputable conflict with the terms of the agreement).

## V.   PLAINTIFF HAS NOT AND CANNOT STATE A CLAIM FOR NEGLIGENT MISREPRESENTATION

Plaintiff's negligent misrepresentation claim fails on four independent grounds.  *First*, plaintiff's claim is wholly duplicative of his breach of contract claim because it is based on the same alleged wrongful conduct.  (*See* Defs.' Mem. at 22.)  Plaintiff does not contend that his two claims are based on different alleged wrongful conduct.  Instead, he attempts to cure this defect with an innovative if not legally accurate argument – i.e., because he conceded that he asserts his breach of contract claim only against Thales and because he now declares that his negligent misrepresentation claim is only against "Fludzinski and Ershov as individuals . . . it is not duplicative of the breach of contract count."  (Pl.'s Opp'n Mem. at 23.)  Unfortunately for plaintiff, however, it is the underlying conduct that is the measure not the parties plaintiff chooses to assert his claims against. *Cf. MIG, Inc. v. Paul, Weiss, Rifkind, Wharton & Garrison, L.L.P.*, 701 F. Supp.2d 518, 532 (S.D.N.Y. 2010) (holding that similarity of factual allegations determine duplicative nature of

13

claim).  Here, plaintiff seeks to hold Fludzinski and Ershov personally responsible for alleged

misstatements made as officers of Thales in connection with the negotiation of the DCA that

ultimately are subsumed in the terms of the contract as obligations of Thales.  (*Compare* Pl.'s

Opp'n Mem. at 22 and Compl. ¶¶ 17-21 (discussing statements by Fludzinski and Ershov in

connection with breach of contract claim) *with* Compl. ¶¶ 53-57 (enumerating alleged

misrepresentations by Fludzinski and Ershov).  Absent a duty independent of the contract, which

plaintiff has not alleged, plaintiff's negligent misrepresentation claim fails.  *See Guilbert v.

Gardner*, 480 F.3d 140, 148 (2d Cir. 2007) (citing *Clark-Fitzpatrick, Inc. v. Long Island R. Co.*, 516

N.E.2d 190, 194 (N.Y. 1987) (affirming dismissal of negligence claims where "plaintiff has not

alleged the violation of a legal duty independent of the contract"); *Brown v. Brown*, 785 N.Y.S.2d

417, 419 (App. Div. 2004) (holding that plaintiff's fraud claim is "precluded by the fact that a

simple breach of contract claim may not be considered a tort unless a legal duty independent of the

contract--i.e., one arising out of circumstances extraneous to, and not constituting elements of, the

contract itself--has been violated"); *see also Campbell*, 2010 U.S. Dist. LEXIS 114439, at \*18.

    *Second*, the alleged misrepresentations are promissory in nature and thus not actionable.  In

response, plaintiff now "pleads" a whole new theory not found in any of his three complaints.  He

now claims that he was awarded a $3.271 million bonus, which he deferred, and that the "receipt of

[that] award was not a future event that might never come to fruition," and thus not promissory in

nature.  (Pl.'s Opp'n Mem. at 24.)  That argument once again disregards the terms of the Plan and

DCA.  Under the DCA, the right to the award is wholly contingent on the award vesting, which

would never happen if plaintiff voluntarily resigned or was terminated for cause.  (Bieber Decl. Ex.

D.) Moreover, the amount of the award was dependent on the returns of the hypothetical investment

vehicle.  (*Id*.)  The alleged misstatements are thus promissory in nature and should be dismissed. *Campbell*, 2010 U.S. Dist. LEXIS 114439, at *18.

> *Third*, defendants highlighted that the subject matter of each alleged misrepresentation was addressed in the DCA, and as such plaintiff's reliance on the alleged misrepresentation was unreasonable as a matter of law.  (Defs.' Mem. at 27-28.)

| Alleged Misrepresentation | | DCA Provision |
|---|---|---|
| Award would be rolled over to new fund (Compl. ¶ 53) | | Hypothetical investment vehicle is Thales Holdings |
| Award would be invested in money market account on termination (Compl. ¶ 56) | | Unfunded award would be measured by money market account on termination |
| Award would only be forfeited on voluntary termination before January 1, 2010 (Compl. ¶ 57) | | Award would be forfeited on voluntary termination or termination for cause before January 1, 2010 |

In his opposition, plaintiff again ignores the express provisions of the agreement that was executed well after the alleged misrepresentations and instead claims that his reliance on the alleged misrepresentations was not unreasonable as a matter of law because (1) defendant Fludzinski said that his award would be "rolled over" to a new investment vehicle; (2) Thales, the investment advisor, was being liquidated; and (3) had plaintiff known that Thales was liquidating he would not have deferred his compensation because he would have known that there would not be a new fund.[17]  (Pl.'s Opp'n Mem. at 23-24.)

---

[17] The last two of these assertions are noticeably absent from plaintiff's third complaint.

The Complaint alleges that a decision was made to liquidate *Thales Holdings* on March 31, 2008.[18]  There is no allegation that any decision was ever made to liquidate *Thales*.  (Compl. ¶ 18.) Indeed, even the alleged decision to liquidate Thales Holdings occurred after the alleged misrepresentation.  (Compl. ¶ 18 (alleging that plaintiff decided to defer his award in February 2008 based on Mr. Fludzinski's representation)).  Any claim that Mssrs. Fludzinski and Ershov[19]  knew at the time of Mr. Fludzinski's alleged misrepresentation that Thales was liquidating is contradicted by the allegations in the Complaint.  Thus, even assuming (1) that Mr. Fludzinski made such a promise; (2) that Thales was being liquidated, which it was not; and (3) that plaintiff was as completely ignorant of the financial condition of both Thales and Thales Holdings that he now claims to have been (notwithstanding the closure of his group and the allegedly forced deferral of

---

[18] The notes to the draft 2008 financial statements provide in pertinent part:  "On March 31, 2008, the Investment Vehicles, based on a meeting held with the Investment Manager and shareholders, reached unanimous decision to adopt a plan of liquidation and create a trust of all assets of [Thales Holdings]."  (Bieber Reply Decl. Ex. B at 22; Pl.'s Opp'n Mem. at 24.)  The e-mail from Jamin Koslowe attached to Exhibit B of the Doherty Declaration and quoted in paragraph 30 of the Complaint (the "Koslowe E-mail") attaches draft Thales Holdings financial statements for 2008 and 2009.  Plaintiff conveniently omitted those attachments from that exhibit and instead appended draft 2008 financial statements to Exhibit C that exclude the Notes to the Financial Statements (although the Complaint cites the missing notes to the 2008 financial statements in paragraph 18).  The complete Koslowe e-mail is appended to the Bieber Reply Declaration as Exhibit B.

[19] Plaintiff's specific factual allegations against Mr. Ershov in support of this claim are non-existent.  Indeed, one of the grounds on which defendants moved to dismiss the negligent misrepresentation claim was the failure plead with particularity required by Rule 9(b).  (Defs.' Mem. at 24-25.)  Plaintiff has now amended his complaint twice and has yet to allege any particularized facts to support a claim that Ershov made any misrepresentation to him, let alone one upon which he relied that caused him any damage.  Notwithstanding plaintiff's generic allegations regarding "defendants" generally, plaintiff in the Second Amended Complaint pleads only that Fludzinski, not Ershov, allegedly told plaintiff that his compensation would be "rolled-over" into a new fund and that it was this alleged statement that caused plaintiff to defer his bonus.  (Compl. ¶¶ 17 & 20, *see also* Pl.'s Opp'n Mem. at 4-5.)  As discussed herein, after three pleadings, plaintiff has not alleged an actionable misrepresentation claim as against any of the defendants thus requiring dismissal with prejudice.  At a minimum, however, his conclusory allegations about Ershov and plaintiff's admission that he relied on the alleged statements of others in making his investment decision should be more than sufficient to dismiss the negligent misrepresentation claim against Ershov.

16

his bonus), plaintiff has not alleged that the purported statement was anything but an accurate statement at the time it was made.

Finally, plaintiff makes no attempt to address the remaining arguments put forth in defendants' opening brief, including that plaintiff has failed to satisfy the requirements of Rule 9(b). *See generally Naughright v. Weiss*, 10 Civ. 8451, 2012 U.S. Dist. LEXIS 30940, at *13 (S.D.N.Y. Mar. 7, 2012). For all of the reasons set forth in defendants' opening memorandum and this reply, plaintiff's negligent misrepresentation claim must therefore be dismissed.

## VI.   PLAINTIFF FAILS TO ALLEGE THAT HE IS OWED ANY ADDITIONAL DEFERRED COMPENSATION

At bottom, this is a claim for money owed; yet, plaintiff fails to allege any basis to allow any inference, let alone a reasonable one, that plaintiff is owed the $3.271[20] million he claims throughout the Complaint. (Compl. ¶¶ 21, 31, 49; Pl.'s Opp'n Mem. at 2, 5, & 16.) Plaintiff cannot reconcile his demand with even his own acknowledgement that under the Plan the ultimate value of his 2009 Award can only be determined by reference to the performance of Thales Holdings, which the Complaint alleges sustained losses during the relevant time. (Pl.'s Opp'n Mem. at 18; Bieber Decl. Ex. D.) Apparently recognizing this fatal flaw, plaintiff now seeks to distance himself from his own allegations and tries to create an inference, however unreasonable, that Thales Holdings

---

[20] Plaintiff does, however, agree that any reference to the original award of $3,271,000 must be reduced by the approximately $700,000 he has already received.

maintained its value during 2008 and the first half of 2009.  (Pl.'s Opp'n Mem. at 18.)  This he cannot do.[21]

According to plaintiff, the Complaint "details the struggles of Thales itself [ ] but does not allege anything about the state of Thales Holdings (which is mostly unknown to Plaintiff at this time)."  (Pl.'s Opp'n Mem. at 18.)  Putting aside the implausibility of that statement, it is inconsistent with the substance of plaintiff's pleading.  Although the Complaint purports to define "Thales" as Thales Fund Management, LLC (Compl. ¶ 3), it does not employ the defined term consistently and contains allegations that can only relate to the fund, not its manager.  For instance, the Complaint alleges that (1) "Thales' investors were making redemption requests" and (2) plaintiff's group made "profits for Thales' investors and accordingly Thales Fund Management." Thales (as defined herein) was a registered investment advisor that managed a hedge fund.  (Compl. ¶ 3; Bieber Reply Decl., Ex. B at 3-13 (2009 financial statements).)   As any investment professional would know, investors make profits from and redeem from funds, not from investment advisors.  *See, e.g. Janus Capital Group, Inc. v. First Derivative Traders*, 131 S. Ct. 2296, 2299 (U.S. 2011) (explaining fund structure and operation, including distinction between investment advisor and investment fund).  As such, notwithstanding plaintiff's general but inconsistent use of the term Thales, these allegations cannot relate to defendant Thales, the investment advisor.

---

[21] Plaintiff makes much out of defendants' statement that Thales Holdings is a master feeder to several funds claiming that "[s]ince there has been no discovery in this case, there is no information on the existence of these funds."  Defendants merely referenced those funds and the fund structure as benign background information that bears little on this motion.  Plaintiff's claimed ignorance is astounding, however.  Even the Employment Agreement that spells out the terms of his bonus compensation on which this action rests (*see* Compl. ¶14 (citing employment agreement)), explains that he was a Thales portfolio manager for the merger arbitrage and special situations portfolios, which were part of Thales Holding's overall portfolio.   (Bieber Reply Decl. Ex. C (cited by Compl. ¶ 14).)  His claim that he has no knowledge of the structure and underlying investments of Thales Holding rings hollow.

Indeed, it is doubtful that a fund manager, which receives its fees from the funds it manages, would (1) "struggle[e] financially" (Compl. ¶ 16), (2) close a portfolio group (Compl. ¶ 20), and (3) liquidate its fund (Compl. ¶ 18), if that fund was performing well, or even holding its own.  Nor does the fact that "a number" of investors were making redemption demands further plaintiff's claim that he is unaware of Thales Holdings' performance.  (Compl. ¶ 16.)  The Complaint on its face, therefore, alleges that Thales Holdings was not performing well, and accordingly, this Court cannot credit plaintiff's claim that he is due the original award of $3.271 million.

The e-mails cited by plaintiff only serve to bolster that conclusion because none of those e-mails asserts that plaintiff is owed the full amount of the original award.  (*See* Bieber Decl. Exs. E & I; Bieber Reply Decl. Ex. B.)  Indeed, plaintiff's reliance of the e-mail dated February 10, 2009 is misleading, at best.  (Bieber Decl. Ex. E; Compl. ¶ 26; Pl.'s. Opp'n. Mem. at 6).  On its face that $2.4 million relates to plaintiff's 2008 Award, which vested January 2009;[22] a fact clear on the face of the e-mail that was raised in defendants' opening brief (Defs.' Mem. at n.6), and remains unanswered by plaintiff.[23]

---

[22] The 2008 Award was granted in late 2007, and vested in January 2009.  (Bieber Decl. Ex C.)

[23] Plaintiff points to two other e-mails for his assertion that he is owed the full amount of the original award.  First, he points to an e-mail between plaintiff and defendant Fludzinski from November 23, 2009 in which Mr. Fludzinski explains "the total amount owed is approximately $2.1m" although that e-mail notes that the accountant's review was not yet complete (Bieber Decl. Ex. I.)  Next, plaintiff cites the e-mail from Jamin Koslowe attaching the 2008 and 2009 Thales Holdings financial statements in which Koslowe notes that the returns as reviewed by the auditors are less than previously estimated.  According to the 2008 financial statements, *see supra* n.18, Thales Holdings lost almost 20% of its value in 2008 (Bieber Reply Decl. Ex. B at 21), thus reducing the value of plaintiff's 2009 Award.  Interestingly, plaintiff does not appear to take issue with the 2008 return insofar as he has not challenged his 2008 Award.  The financial statements for the period ended June 30, 2009 provide that the return was *negative* 85%.  (Compl. ¶ 30; Bieber Reply Decl. Ex. B at 10.)

19

Taken together, plaintiff's allegations support the conclusion that Thales Holdings was dealt a fatal blow during the financial crisis and plaintiff cannot plausibly claim $3.271 million is owed.[24]

## **CONCLUSION**

For the foregoing reasons, defendants respectfully request that the Court dismiss the Complaint in its entirety with prejudice.

Dated:  July 31, 2012  
New York, New York

TANNENBAUM HELPERN SYRACUSE  
& HIRSCHTRITT LLP

By:   /s/Tammy P. Bieber  
    Tammy P. Bieber

900 Third Avenue  
New York, New York  
(212) 508-6700

*Attorneys for Defendants Thales Fund Management, LLC, Thales Fund Management, LLC Deferred Compensation Plan, Marek Fludzinski and Kevin Ershov*

# 964529v4

---

[24] To the extent plaintiff now seeks to amend his complaint a fourth time to allege that he is owed something more than $700,000 and less than $3.271 million (*see* Pl.'s Opp'n Mem. at 18), plaintiff has provided no bases to challenge the final returns of Thales Holdings.  Moreover, the e-mail plaintiff points to in his opposition is a red herring.  Plaintiff references a February 2009 e-mail between Tim Teneglia and Mr. Fludzinski in his attempt to "controvert[ ] the assertion that Plaintiff's award was reduced to $700,000."  (Pl.'s Opp'n Mem. at 19.)  First, that e-mail applies to plaintiff's 2008 Award because in February 2009 even plaintiff does not claim that his 2009 Award had vested.  Second, nothing in that e-mail chain suggests that the contents of Mr. Teneglia's e-mail represent the returns (or the holdings) of Thales Holdings.  Quite the contrary, the final e-mail from Mr. Fludzinski expressly states that the returns outlined by Mr. Tenaglia were to be adjusted to "accurately reflect thales holdings ror (rate of return) for the year."  Plaintiff again ignores the indisputable fact that his deferred compensation account was unfunded and thus, there was no pot of money over which he has a claim.  (Bieber Decl. Ex. A ¶¶ 4.9, 6.1.)  Whether or not Thales made investments in Thales Holdings, other funds, or cash that it referred to as "deferred," plaintiff has no right to those investments or their returns.  Indeed, the Plan expressly envisioned that Thales may make investments on its own behalf in connection with the Plan.  (Bieber Decl. Ex A ¶ 4.9 ("In the event the Company, in its discretion, decides to invest funds in any or all of the hypothetical investment vehicles, no Participant shall have any rights in or to such investments.").)