UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
THOMAS WEEKLEY,                       :
                                      :        12 Civ. 2499 (JSR)
        Plaintiff,                    :
                                      :        MEMORANDUM ORDER
                                      :
        -v-                           :
                                      :
THALES FUND MANAGEMENT, LLC,  THALES  :
FUND MANAGEMENT, LLC DEFERRED         :
COMPENSATION PLAN, MAREK FLUDZINSKI,  :
and KEVIN ERSHOV,                     :
                                      :
        Defendants.                   :
------------------------------------x



JED S. RAKOFF, U.S.D.J.

    Plaintiff Thomas Weekley alleges that his former employer, its

deferred compensation plan, and two of its principals wrongfully

refused to pay him certain sums of deferred bonus compensation due

after his termination.  Based on these allegations, plaintiff's

Second Amended Complaint ("SAC") asserted four causes of action,

namely, (1) denial of benefits under, and related violations of, the

Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C.

§§ 1001-1461, (2) breach of fiduciary duties actionable under ERISA,

(3) breach of contract, and (4) negligent misrepresentation.  After

the defendants moved to dismiss the complaint in its entirety, the

Court, on August 16, 2012, issued a "bottom-line" order granting the

motion.  Specifically, the Court concluded that the deferred

compensation plan at issue was not an ERISA plan, and therefore

dismissed the ERISA claims with prejudice.  The Court further

declined to exercise supplemental jurisdiction over the remaining

state-law claims, and therefore dismissed them without prejudice to their being re-filed in state court.  This Memorandum explains the reasons for those rulings and directs the entry of final judgment.

The relevant factual allegations in the SAC are as follows. Plaintiff, a resident of Dobbs Ferry, New York, was hired in 2004 by defendant Thales Fund Management, LLC ("Thales"), a New York-based hedge fund, as a Portfolio Manager.  SAC ¶¶ 2, 3, 13.  In that position, plaintiff managed Thales's "event-driven trading group" and reported to defendant Marek Fludzinski, Thales's founder and CEO.  Id. ¶¶ 5, 13, 14.  Because of that group's overall profitability in 2007, the employees in the group were eligible for a bonus pool of $5,421,125, of which plaintiff allocated $2,150,000 to his group and $3,271,000 to himself.  Id. ¶ 15.

Beginning in late 2007 and early 2008, however, Thales began to struggle financially, and its investors began making redemption demands.  Id. ¶ 16.  Attempting to weather the financial storm, Fludzinski allegedly induced plaintiff to defer taking his 2007 bonus at that time by making use of the Thales Fund Management, LLC Deferred Compensation Plan (the "Plan").  Id. ¶¶ 4, 17.  Although Thales shut down plaintiff's group in March 2008, plaintiff nevertheless signed a Deferred Compensation Agreement ("Agreement") on April 7, 2008, deferring his entire $3.3 million bonus by "rolling it over" into the Plan.  Id. ¶¶ 17, 20-21.

Thales's financial position continued to deteriorate in the remainder of 2008 and the first half of 2009, during which time

plaintiff repeatedly requested "information and assurances" regarding his deferred compensation.  Id. ¶ 22.  Fludzinski and defendant Kevin Ershov, Thales's Chief Investment Officer, allegedly provided plaintiff with "inconsistent, misleading and opaque answers" to these requests.  Id. ¶¶ 6, 25.  On June 22, 2009, allegedly in retaliation for plaintiff's requests for information, Thales terminated plaintiff's employment without cause.  Id. ¶ 23. Defendants later paid plaintiff $700,000 in deferred compensation rather than the full $3.3 million allegedly due to him under his Agreement and the Plan.  Id. ¶ 31.

The introductory paragraph of the Plan states that "[i]t is intended that the Plan constitute an unfunded 'top hat plan' for purposes of [ERISA]."  Decl. of Tammy P. Bieber ("Bieber Decl."), Ex. A ("Plan"), art. 1.  "An ERISA 'top hat plan' has been defined to mean 'a plan which is unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees . . . ." Campbell v. Thales Fund Mgmt., LLC, No. 10 Civ. 3177(JSR), 2010 WL 4455299, at *3 (S.D.N.Y. Oct. 12, 2010) (quoting Demery v. Extebank Deferred Compensation Plan (B), 216 F.3d 283, 286-87 (2d Cir. 2000). The Plan operated by creating an account for each plan participant in the amount of his or her deferred bonus.  No money or assets were deposited in these accounts, however; they were "maintained solely as bookkeeping entries to evidence unfunded obligations."  Plan § 2.9.  The accounts were then debited or credited based on the

performance of a "hypothetical investment" used for measurement

purposes.  Id. §§ 4.6, 4.9.  The award itself was distributed on a

date or event chosen ex ante by the participant.  Id. § 5.1.  That

election was irrevocable unless the participant chose to further

defer the bonus in accordance with certain requirements under the

tax code.  See id. § 4.3; 26 U.S.C. § 409A(a)(4)(C).

Under the terms of his Agreement, plaintiff's award was to vest

and be distributed on January 1, 2010.  Bieber Decl. Ex. D

("Agreement"), at 1.  If before that date plaintiff were to

terminate his employment, or if Thales were to terminate his

employment for cause, plaintiff would forfeit his award in its

entirety.  Id.  But if Thales were to terminate plaintiff's

employment without cause (as occurred in this case, SAC ¶ 23), then

the award would vest on termination.  Agreement, at 1.  The

Agreement and the Plan also provided that if all or part of the

award were to be paid after plaintiff left Thales's employ, Thales

could pay the award on the later of (1) the date selected by the

plaintiff (i.e. January 1, 2010) or (2) the first anniversary of

plaintiff's separation from service (i.e. June 22, 2010).  Id.; Plan

§ 5.1.  The Plan also provided a thirty-day cushion for

administrative delays in payment.  Id. § 5.4.

In addition to the foregoing allegations, the Court may take

cognizance of the fact that the deferral at issue in this case was

not the first time plaintiff had participated in the Plan.

Plaintiff also signed two similar Agreements pursuant to the Plan in

late 2005 and late 2007.  Bieber Decl., Exs. B & C ("2005 Agreement"

and "2007 Agreement," respectively).[1]  The terms of all three

Agreements are materially identical except for the amount of

compensation deferred, the vesting date, and the distribution date.

In the 2005 Agreement, plaintiff deferred $460,000, to be vested on

January 1, 2007, and to be distributed in January 2009.  2005

Agreement, at 1.  In the 2007 Agreement, plaintiff deferred

approximately $3.7 million, to be vested and distributed on January

1, 2009.  2007 Agreement, at 1.  Plaintiff has not alleged that

either of these earlier deferred bonuses were not fully paid in

accordance with the terms of the relevant Agreement.

Defendants have moved for dismissal on the ground, among

others, that the Plan is not an ERISA plan.[2]  ERISA defines the terms

"employee pension benefit plan" and "pension plan" to mean

> any plan, fund, or program . . . to the extent that by its
> express terms or as a result of surrounding circumstances
> such plan, fund, or program (i) provides retirement income
> to employees, or (ii) results in a deferral of income by

---

[1] On a motion to dismiss, "the complaint is deemed to include any
written instrument attached to it as an exhibit or any statements or
documents incorporated in it by reference." Chambers v. Time
Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002).  The 2005 and 2007
deferrals are specifically referenced in an email that is, in turn,
specifically referenced and relied on in the SAC.  See SAC ¶ 26;
Bieber Decl., Ex. E. The earlier deferrals are therefore properly
before the Court on this motion.

[2] Defendants characterize this argument as supporting dismissal for
lack of subject matter jurisdiction under Rule 12(b)(1).  See Def.'s
Br. 8.  However, whether or not the Plan is covered by ERISA does
not affect this Court's jurisdiction under 29 U.S.C. § 1132(f) or 28
U.S.C. § 1331, but rather goes to the merits of plaintiff's claims.
See Carlson v. Principal Fin. Grp., 320 F.3d 301, 307 (2d Cir.
2003).

employees for periods extending to the termination of
covered employment or beyond . . . .

29 U.S.C. § 1002(2)(A).  Regulations promulgated by the Department
of Labor clarify that those statutory terms "shall not include
payments made by an employer to some or all of its employees as
bonuses for work performed, unless such payments are systematically
deferred to the termination of covered employment or beyond, or so
as to provide retirement income to employees."  29 C.F.R. § 2510.3-
2(c) (emphasis added).  Because plaintiff's ERISA claims hinge on
the existence of an ERISA plan, and because plaintiff's deferral
concerned bonus compensation, the critical question is whether the
Plan "systematically deferred" payments to termination or beyond.

This is not the first time the Court has considered this
question.  In Campbell v. Thales Fund Management, LLC, two of
Weekley's subordinates in the event-driven trading group sued the
same defendants (as well as a third individual Thales officer) for
similar causes of action based on similar factual allegations.  See
Campbell, 2010 WL 4455299, at *1-2.  The defendants moved to dismiss
on the ground, among others, that the Plan was not an ERISA plan.
Id. at *2.  While acknowledging that "defendants' contentions in
this regard are not without some force," the Court concluded that
dismissal was unwarranted on the record then before it.  Id. at *3.
In particular, the allegations in that case were to the effect that
the Thales Plan systematically deferred compensation until
retirement.  Id.  In the absence of any contrary indications that

the Plan in fact did not systematically defer payments to termination or beyond, the Court found these allegations sufficient to allow the ERISA claims in Campbell to proceed to discovery.

In this case, however, additional "surrounding circumstances" -- which the statute expressly directs the Court to consider, 29 U.S.C. § 1002(2)(A) -- indicate that the Plan did not systematically defer payments to termination or beyond, for several reasons:

To begin with, the Plan, as the SAC itself alleges, did not operate in accordance with its terms.  Specifically, the SAC alleges that even though the Plan's terms provide that it is intended to be an ERISA "top hat plan," it did not in fact operate as a top hat plan.  SAC ¶¶ 42-44.

More importantly, unlike in Campbell, where the plaintiffs had not signed any Agreement, plaintiff here signed three separate Agreements that each provided for deferred bonuses to be paid before his separation from service at Thales.  The two previous Agreements both provide for deferred bonuses to be distributed on January 1, 2009 -- i.e., before plaintiff's termination.  Similarly, if plaintiff had not been terminated in mid-2009, the 2009 Agreement would have distributed a deferred bonus on January 1, 2010, before termination.  The single deferred bonus plaintiff alleges Thales paid after his termination was paid at that time simply because Thales happened to terminate his employment without cause before the scheduled distribution date.

It is thus apparent that the Plan did not systematically defer payments to termination or beyond.  As Chief Judge Preska has explained, ERISA

> requires that a plan generally defer the receipt of income to the termination of employment.  The statute is not satisfied when, under the facts of a particular case, a portion of withheld income happens to become due after termination.  This reading comports not only with the language, but with the general purpose of ERISA to protect employees' expectations concerning the receipt of retirement income.

Foster v. Bell Atl. Tricon Leasing Corp., No. 93 Civ. 4527(LAP), 1994 WL 150830, at *2 (S.D.N.Y. Apr. 20, 1994) (quoting Hagel v. United Land Co., 759 F. Supp. 1199, 1202 (E.D.Va. 1991)) (emphasis by Judge Preska).  That principle is fully applicable here, as it is clear that the Plan generally distributed awards before termination, and did so after termination in one instance only because of the happenstance of when plaintiff was fired.  "The mere fact that payments made pursuant to a plan continue after retirement does not transform an otherwise excluded bonus plan into one whose payments are 'systematically deferred' to the termination of employment or one whose purpose is to provide retirement income."  Hahn v. Nat'l Westminister Bank, N.A., 99 F. Supp. 2d 275, 279 (E.D.N.Y. 2000).

In response, plaintiff references four provisions of the Plan that collectively contemplate deferrals of compensation to termination or beyond.  Pl.'s Br. 9-10.  Specifically, Section 4.2 allows Plan participants to defer their awards, Section 4.3 places restrictions on deferrals in accordance with Section 409A(a)(4)(C)

of the Internal Revenue Code, and Sections 4.6 and 5.1 prescribe special rules and procedures that apply to those prior sections if an award is distributed after a participant's separation from service.  Plan §§ 4.2, 4.3, 4.6, 5.1.  But although these provisions show that the Plan allows post-termination deferrals, they give no indication that such deferrals are systematic.

Plaintiff responds to this difficulty by arguing that "[h]ow one plan participant utilized the Thales Plan in a prior year is not indicative of how the Plan operated as a whole."  Pl.'s Br. 8.  But the SAC does not allege that plaintiff's use of the Plan -- not just once, but three times -- was in any way unique or atypical.  This might not be dispositive if one were dealing with the original complaint.  But plaintiff, in the face of defendants' arguments, twice amended his complaint without adding a single allegation as to how the Plan actually operated beyond his particular case.

It remains only to add that plaintiff's reliance on Serio v. Wachovia Securities, LLC, 06-cv-4681(DMC), 2007 WL 2462626 (D.N.J. Aug. 27, 2007), Holzer v. Prudential Equity Group LLC, 458 F. Supp. 2d 587 (N.D. Ill. 2006), and Holansky v. Prudential Financial, No. 02 C 4820, 2004 WL 1404016 (N.D. Ill. June 21, 2004), is misplaced. In each of those cases, the plaintiff alleged that the employer expressly represented that the plan at issue was a retirement plan, thus providing "surrounding circumstances" that are not present here.  See Serio, 2007 WL 2462626, at *5-7; Holzer, 458 F. Supp. 2d at 592-93; Holansky, 2004 WL 1404016, at *1-2.  In this case,

plaintiff has not alleged that Thales promoted its Plan as a retirement plan.

In short, based on the complaint and the documents incorporated by reference therein, plaintiff has not plausibly alleged that Thales's Plan systematically deferred compensation to termination or beyond.  The Plan therefore is not covered by ERISA, and thus plaintiff's ERISA claims must be dismissed for failure to state a claim under Rule 12(b)(6).  Furthermore, having dismissed the complaint's federal law claims at an early stage of the litigation on a threshold issue, the Court declines to exercise supplemental jurisdiction over plaintiff's remaining state-law claims under 28 U.S.C. § 1367(c)(3).[3]  Accordingly, for the foregoing reasons, the Court confirms its order of August 16, 2012, dismissing plaintiff's ERISA claims with prejudice and dismissing plaintiff's state-law claims without prejudice to re-filing in state court.  The Clerk of the Court is directed to enter final judgment.

SO ORDERED.

Dated: New York, NY
December 27, 2012

JED S. RAKOFF, U.S.D.J.

---

[3] Plaintiff requests that that the Court "remand the remaining [state law] claims to state court." Pl.'s Br. 12 n.3.  However, remand is not available here because plaintiff first filed this case in federal court.  See generally 28 U.S.C. § 1441.  It is thus up to plaintiff to file in state court, if he properly can.